Judge Underwood
delivered the opinion of the Court.
The general assembly of the commonwealth, on the 7th of January, 1824, passed an act subjecting the “master or commander of a steam boat or other vessel, who Shall hire, or employ, or take as passenger or otherwise, out of the limits of this stale,” any person of colour, (unless such coloured person shall have in his possession the record of some court of the United States, propérly exemplified, proving his freedom, or unless, the owner of such coloured person consents,) to indictment, fine and imprisonment, and also to a liability in damages to the party aggrieved by snch removal. The vessel, in which the person of colour is removed “out of the limits of this commonwealth,” is likewise made liable, by the act, to the party aggrieved oy such removal.
- Edwards, under the provisions of this statute, filed his bill in chancery against Vail, and the steam boat Virginia, charging, that a negro, the property of Edwards, was taken on board said boat at Louisville* *596 and transported out of the limits of 'the, state of Ken tuchy. The circuit court decided against the complainant, and he has appealed.
Act of 1824, “master or commanderof steam-boat or whoshallhire, take as pa?sender oro th-the limite of ais state, any person of col-ma^es, &c!a" does notap-PJy to °*lses íored'person9 is taken on board in ter-shores of am-ito-state.
The legislature designed, by the statute, to prevent the removal of slaves out of the limits of the state, without the consent of their o» ners. The evil intended to be averted was, the loss of property to our citizens, resulting to owners of slaves, by tolerating the masters ahd commanders.of vessels in hiring, or in any other manner, taking slaves on board, and transporting them out of the limits of the sta‘e. Such conduct, on the part of masters and commanders of' vessels, might render it impossible for the owner of a slave to reclaim him. In the present case, it is not clear, that the complainant’s slave was ever taken on board the steam boat Virginia. The evidence on the subject consists in the description given by one of the boat-hands, of a negro who was on board, and who was unknown to the witness, compared with the descriptions given of the complainant’s slave by witnesses who knew him. There is a want of coincidence in some particulars in the descriptions thus given, and we are inclined to the opinion, thattlie negro on board the boat is not identified as the slave of,the complainant. But upon another ground, we think the circuit court correctly dismissed the bill. The negro on the boat, and who ascended in it to Cfineinnati, came on board from Jeffersonville, Indiana, with a white woman, and left the boat upon its arrival at Cincinnati, or shortIy afterwards. It is thus clear, that the alie-gation of the bill, charging, that the negro was takers on board at Louisville, is not sustained. The question js here presented; does the statute apply to cases. where the coloured persons are received on board in the territory, or from the shores of another state? \yt, think it does not. If coloured persons are taken on ^oar<l steam boats at Pittsburgh, Nashville, or Florence, and transported to New Orleans, they must necessarily be “removed out of the limits of this commonwealth,” in their transit to the port of destination, Literally, such cases would come within the provisions of the act': but, looking to the mischiefs which legislature must have contemplated, and confining the operation of the act to them, we must except, *597 from the operation of the statute, the cases where coloured persons are taken on board in other states, and pass “out oj the limits of this stute” in their transit over our territory. But in this case, it is contended, that as our territory extends to low water mark on the north bank of the Ohio river, the negro was taken on board in Kentucky, and his coming from Indiana can make no difference. A literal application of the same argument would prove, that the negro was not taken “out of the limits of the state” in the boat, unless it had been shewn, that, on its arrival at Cincinnati, it had been hauled out on dry land, on the north bank, with the negro in it. Qui haerit in litera, haerit in cor-tice. The negro came voluntarily on board from another state, and left the boat voluntarily, and went into another state, the boat remaining all the time in Kentucky.
Denny, for appellant; Nicholas, for appellees.
The decree of the circuit court is affirmed with costs.